IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ARTHUR J. S.,

        Plaintiff,

    v.                                             Civil Action No.
                                                     5:19-CV-0187 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF

AMDURSKY, PELKY, FENNELL        JOHN D. CONNORS, ESQ.
& WALLEN, P.C.
26 East Oneida Street
Oswego, NY 13126

FOR DEFENDANT

HON. GRANT C. JAQUITH            JAMES J. NAGELBERG, ESQ.
United States Attorney               Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on January 16, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: January 22, 2020
Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------x
ARTHUR J. S.,

                         Plaintiff,

vs.                           5:19-CV-187

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on January 16, 2020, at the James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

```
For Plaintiff:      AMDURSKY, PELKY LAW FIRM
                    Attorneys at Law
                    26 East Oneida Street
                    Oswego, New York  13126
                      BY:  AMY CHADWICK, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of the General Counsel
                    15 Sudbury Street
                    Suite 625
                    Boston, Massachusetts  02203
                      BY:  JAMES J. NAGELBERG, ESQ.
```

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1          (In Chambers, Counsel present by telephone.)

2          THE COURT: I have before me a request for judicial review of an adverse determination by the Commissioner of Social Security pursuant to 42 United States Code Section 405(g). Let me begin by commending both of you, your presentations were excellent, you both have a firm grasp of the record and the legal issues presented, and the court appreciates that.

          The background in this matter is as follows: Plaintiff was born in October of 1966, he is currently 53 years old, he was 45 years old at the time of the original onset date of October 15, 2011. He stands 5 foot 11 inches in height and weighs between 195 and 200 pounds. He is divorced. Since May of 2013 plaintiff has lived in Hastings with his brother. Prior to that time he was living with his sister in South Carolina. Plaintiff has a driver's license but no vehicle. There is some uncertainty or vagueness in the record concerning plaintiff's educational background. Clearly he was in special education classes. There's indication at 209 and 210 of the administrative transcript that he withdrew on June 30, 1985. I believe he testified, or there is indication in the record that he went through 12th grade but did not receive a diploma.

          Plaintiff has a fairly robust work history. He stopped working in October of 2011 when he broke a hip.

1  Prior to that time, he worked from 2002 to 2006 in various
2  jobs in electronic assembly of cable connector products; 2006
3  to 2008, he worked assembling boxes; 2007 to 2008, he worked
4  cleaning concrete panels; and 2009 to 2011, he worked on a
5  machine dryer at a vegetable facility.
6        Physically, plaintiff suffered a hip fracture in
7  2011, in South Carolina, and underwent open reduction and
8  internal fixation of a right femoral neck fracture by
9  Dr. Barnaby Dedmond. That is reflected in 357 to 358 of the
10 administrative transcript. He developed recurring hip issues
11 and in 2014, January 31st to be specific, underwent a hybrid
12 right total hip replacement from Dr. Michael Clarke at
13 Upstate University, that's at 376 to 378. Plaintiff has also
14 suffered from prostate cancer and underwent surgery in April
15 of 2015 by Dr. Po Lam. All indications from that surgery,
16 which was robotic, indicates that all of the cancer was
17 removed and there doesn't appear to be any indication of any
18 residual effects. Plaintiff suffers from left eye blindness
19 which he has had since birth. He was born with Coats disease
20 according to his testimony at 39. His right eye vision is
21 good; at 322 it was listed as 20/20; in Exhibit 11F, 20/25 to
22 20/30. He also suffers from glaucoma, retinopathy in his
23 left eye, and age-related cataracts. There's an indication
24 that he qualifies as slightly obese.
25       In terms of activities of daily living, plaintiff

cleans, grocery shops, helps his brother with his animals, does laundry, cooks, showers, dresses, watches television, listens to the radio, goes out, socializes, and at page 345 there's an indication that he has engaged in cutting firewood.

The background procedurally is as follows: The plaintiff applied for Title II disability benefits on August 24, 2015, alleging an onset date of October 15, 2011. Prior to the hearing, plaintiff sought an amendment of that date to May 10, 2013. In his functional report plaintiff claims disability based on prostate cancer (stage unknown), learning disability, illiteracy, and blindness in his left eye, that's at 188 of the administrative transcript.

A hearing was conducted in connection with plaintiff's application for benefits on January 4th, 19 -- 2018, I'm sorry, by Administrative Law Judge Laureen Penn. ALJ Penn issued a decision on January 17, 2018 finding that plaintiff was not disabled at the relevant times and therefore ineligible for the benefits sought. That became a final determination of the agency on December 26, 2018 when the Social Security Administration Appeals Council denied his request for review.

In her decision, ALJ Penn applied the familiar five-step sequential test for determining disability.

At step one, ALJ Penn found that plaintiff had not

1  engaged in substantial gainful activity from the time of the
2  original onset date of October 15, 2011 until the end of his
3  insured status on December 31, 2016.
4  　　　　At step two, the Administrative Law Judge concluded
5  that plaintiff suffers from multiple severe impairments that
6  impose more than minimal limitations on his ability to
7  perform work-related functions, including -- and I will
8  probably butcher the pronunciations of several of these --
9  malignant neoplasm prostate, elevated prostate specific
10 antigen, status-post radical prostatectomy, status-post
11 complete revision right hip arthroplasty, osteoarthritis
12 localized hip with avascular necrosis, obesity, and left eye
13 blindness.  At step three, the Administrative Law Judge --
14 and I should say, and I'll come back to this, at that step
15 she specifically considered the issues associated with
16 alleged illiteracy and learning disability and rejected those
17 as severe impairments.
18 　　　　At step three, the Administrative Law Judge
19 concluded that plaintiff's impairments did not meet or
20 medically equal any of the listed presumptively disabling
21 conditions set forth in the Commissioner's regulations,
22 specifically considering Listings 13.24, 2.02, 2.03, 2.04,
23 1.02A, and in connection with obesity, Social Security Ruling
24 02-1p.
25 　　　　The Administrative Law Judge next concluded that

plaintiff retains the ability to perform light work with limitations, including as follows: He can occasionally stoop, crouch, kneel, and crawl. He can occasionally climb stairs and ramps but cannot climb ladders, ropes, or scaffolds. He needs to avoid concentrated exposure to hazards. He can do work that can be learned through observation or verbal instruction. He can perform jobs that require frequent near acuity and frequent far acuity, and occasional peripheral vision.

Applying that residual functional capacity finding, or RFC, at step four, the Administrative Law Judge concluded that while plaintiff is not able to perform as a material handler, he is nonetheless able to meet the demands of past relevant work as a hand packer, patching helper, and electronic sub assembler.

The Administrative Law Judge did, as an alternative basis for concluding no disability, proceed to step five where of course the burden of proof shifts to the Commissioner. She first found that if plaintiff were able to perform a full range of light work, the Medical Vocational Guidelines or Grid Rules, and specifically Rules 202.18 and 202.11 will require a finding of no disability.

After eliciting the testimony of a vocational expert, due to the existence of additional exertional and nonexertional limitations, she concluded that plaintiff is

1  nonetheless capable of performing as a small products
2  assembler, a cafeteria attendant, an injection molder, and a
3  housekeeper, and therefore concluded that plaintiff was not
4  disabled at the relevant times.
5          As you know, my task is limited.  I must apply a
6  substantial evidence test and also determine whether correct
7  legal principles were applied.  The term substantial evidence
8  has been defined to mean such evidence as a reasonable mind
9  would consider adequate to support a conclusion.  The Second
10 Circuit noted in *Brault v. Social Security Administration*,
11 683 F.3d 443, a decision from 2012, that this is an exacting
12 standard, it is more stringent than the clearly erroneous
13 standard that we're all familiar with.  And notably in that
14 case, the Second Circuit found that facts found by an
15 Administrative Law Judge can be rejected only if a reasonable
16 fact finder would have to conclude otherwise.
17         In this case, plaintiff raises several issues.
18 First, she claims that it was error -- he claims that it was
19 error in the Administrative Judge's failure to amend the
20 onset date as requested prior to the hearing.
21         He also challenges the step two finding, and
22 specifically the failure to find illiteracy or learning
23 disability or to develop the record by requiring testing to
24 probe that issue.
25         Third, the plaintiff alleges that the residual

1  functional capacity is not supported, and issues -- sub
2  issues raised there include the question of vision and the
3  question of the ability to stand as well as to crouch, kneel,
4  and crawl.
5      At step four, the plaintiff quarrels with the
6  vocational expert's finding and the Administrative Law
7  Judge's conclusion that his past relevant work included that
8  as a material handler, and that of course, as the
9  Commissioner noted and even plaintiff conceded, that will
10 come into play if the step four determination is not upheld
11 and there is a step five inquiry.
12     And the last issue of course is concerning step
13 five, and the error in holding that the plaintiff is not
14 disabled pursuant to the Grids.
15     Turning first to the onset date issue, there was a
16 request at administrative transcript page 213 to amend the
17 onset date to May 10, 2013.  Due to an alleged worsening of
18 plaintiff's hip issue at that time, it was not addressed,
19 clearly.  The matter was not raised at the hearing.  An
20 argument could be made that there was a waiver as a result of
21 the failure to raise it, but nonetheless, it was error as the
22 Commissioner concedes but I find that it was harmless,
23 because the Administrative Law Judge was well within her
24 discretion to consider the longitudinal record, including
25 pre-onset medical records, and one of the issues that the

1  Administrative Law Judge found telling was the failure to
2  seek treatment.  That's an issue that was properly considered
3  under SSR 16-3p.  So I don't find any harmful error with
4  respect to that issue.
5         Turning to the illiteracy and failure to develop
6  the record, the functional report, I note plaintiff indicates
7  at page 194 that he has a learning disability and is
8  illiterate.  He did admit at 187 he can speak and understand
9  English.  At page 35 during his testimony he states that he
10 reads at a first grade level.  Report card from 1983 and 1984
11 indicates that he received a B in functional reading, and a B
12 plus in functional math, it's page 209.  That was something
13 that the Administrative Law Judge found relevant.  Dr. Noia
14 at page 327 indicated that plaintiff's intellectual
15 functioning was estimated to be in the borderline range and
16 at 328 he provided a diagnosis of rule out borderline
17 intellectual functioning, which is not a diagnosis of
18 borderline intellectual functioning itself.
19        Physician's Assistant Sarah Oddo, plaintiff's
20 primary, indicated at 385 she felt plaintiff needed a full
21 evaluation in order to assess his literary skills and his
22 intellectual capacity.  She is not, however, an acceptable
23 medical source and as indicated, Dr. Noia's diagnosis was not
24 a diagnosis itself, but rather a need to rule out the
25 diagnosis.

1            Unquestionably, a plaintiff has a duty to develop
2    the record.  On the other hand, plaintiff also has an
3    obligation under *Poupore* to prove the existence of conditions
4    that impose limitations on his ability to perform
5    work-related functioning.
6            In this case, the matter only comes into play at
7    step five.  It will perhaps matter if, because at the date of
8    last insured, plaintiff was in a category of closely
9    approaching advanced age, if illiterate or unable to
10   communicate in English, a finding of disability could be
11   required under 202.09 of the Grid Rules, but if in the
12   category of limited or less education and able to communicate
13   in English, no disability at 2 -- Grid Rule 202.10.  For
14   younger individuals, 18 to 49, there is no impact.
15           This is a case, I agree with the Commissioner, that
16   is different in a few regards from the case heavily relied on
17   by the plaintiff, which is *Woods v. Commissioner of Social*
18   *Security*, 2014 WL 1280762, from the Northern District of
19   New York, March 27, 2014.  For one thing -- and most
20   importantly, this only applies at step five.  In this case,
21   as you will find further on in my decision, I am upholding
22   the decision -- determination made at step four as supported
23   by substantial evidence.  I note that as we discussed, the
24   fact that plaintiff was able to work at his prior jobs for
25   many years undermines the claim now that he suffers from a

learning disability or illiteracy that precludes him from working, and I do note that the Administrative Law Judge did, in her RFC finding, include limitations to address, or restrictions to address plaintiff's limitations, including specifically that he can do work that can be learned through observation or verbal instruction. So I don't find any harmful error with regard to the step two determination or the argument that the record was not fully developed.

I do agree that this is a case more akin to *Barnaby v. Commissioner of Social Security*, 2018 WL 4522057, from the Northern District of New York in June of 2018 that has been affirmed by the Second Circuit.

In terms of the residual functional capacity, plaintiff was deemed to be able to perform light work with additional modifications. Light work, by regulation, involves no more than 20 pounds at a time lifting with frequent lifting or carrying of objects weighing up to 10 pounds. The regulations provide that even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time, some pushing and pulling of arm or leg controls. The definition goes on but that's the relevant portion, that's in 20 C.F.R. Section 404.1567(b). In this case, the first challenge is to the finding that plaintiff can occasionally stoop, crouch, kneel,

1  or crawl.  He claims that he is unable to perform these
2  functions based on his hip condition.
3          I find that if that was error, and I don't believe
4  it was, but if it was error, it was harmless.  The vocational
5  expert testified at page 58 that it would -- that if
6  plaintiff was not able to perform any of these functions,
7  that would have no impact on the jobs cited.  The DOT
8  definitions associated with those jobs support that.  The
9  first one is sub assembler which is DOT 729.684-054, and that
10 indicates that stooping is not present, kneeling is not
11 present, crouching is not present, and crawling is not
12 present.  The second is hand packager which is DOT 920.587,
13 and again, that indicates that stooping, kneeling, crouching,
14 and crawling are not required.  The third is assembler, small
15 products, DOT 706.684-022, and once again, the indication is
16 that those functions are not present.  So -- oh, and the
17 fourth is injection molding machine tender, DOT 556.685-038,
18 and once again, those functions are not required.  So that
19 error, if it were error, which I find it was not, in any
20 event, was not harmful.
21         The plaintiff challenges the ability to stand and
22 walk for six hours which is required for light work.
23 Dr. Lorensen at page 323 found no gross limitation in
24 plaintiff's ability to stand and walk.  Plaintiff again had
25 the burden to establish this limitation.  At page 321 he

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

1  denied to Dr. Lorensen that he had any hip problems, he
2  stated he is currently not having any problems with the hip
3  at page 321.
4          The rejection of plaintiff's hearing testimony
5  concerning his limitations in walking is supported by
6  substantial evidence, including plaintiff's medical records,
7  many of which indicated that he was doing well and not
8  experiencing hip pain, his statement to Dr. Lorensen and his
9  robust activities of daily living, including helping his
10  brother take care of his animals, chopping wood, and the
11  others.
12          The plaintiff suffers -- suffers from blindness in
13  his left eye.  He challenges the residual functional
14  capacity.  It's a lifetime condition.  It was noted that he
15  has been able to work at the multiple jobs, including those
16  listed at step four, despite his blindness.  He does have
17  blindness in -- he does have good vision in his right eye,
18  20/20 to 20/30.
19          So this is a case very similar to *Dixon v. Astrue*,
20  2011 WL 3419512, the case is from August 5, 2011, the Western
21  District of Arkansas, where, despite the blindness in
22  plaintiff's left eye, it was noted that he was able to work
23  as a meter reader and as an auto mechanic, and that supported
24  the finding that he was able to work.
25          The plaintiff challenges the failure to reference

monocular vision. Monocular vision is not necessarily a disqualifier and monocular vision really doesn't speak to, and is not informational, as informational as the RFC in this case, which was more specific, and spoke to acuity, near acuity, far acuity, and depth perception. The term monocular doesn't necessarily indicate the full extent of a plaintiff's ability to perform necessary sight functions. And I do note that the RFC did address the vision issue when not only it provided that he can perform jobs that require frequent near acuity, frequent far acuity, and occasional peripheral vision but also limited him to only occasionally climbing stairs and ramps and he cannot climb ladders, ropes, or scaffolds, and that should be sufficient to address the vision issues as noted in *Isabell v. Commissioner of Social Security*, 2013 WL 5883409, October 29, 2013 from the District of Maryland.

The plaintiff I note did not question the vocational expert concerning his finding at step four and step five and specifically his finding that plaintiff was able to perform the past relevant work as -- despite his monocular vision, and it could be argued under *Jazvin v. Colvin*, 2015 WL 6591790 from the District of Colorado, that that's a waiver, but in any event the proof is in the pudding. Plaintiff was able for many years, despite his lifelong condition, to perform his past relevant work.

The use of the terms near and far acuity and depth

perception as opposed to monocular is consistent with how the dictionary of titles treats vision, and it's also consistent with *Nunez v. Barnhart*, 2002 WL 31010291 from the Eastern District of New York, September 9, 2002, so I find no error there.

The last two issues raised relate to step five, and the question of whether one of plaintiff's prior positions was properly considered as a material handler.  It's an issue which only applies to step five, and because I find that the step four determination is supported by substantial evidence, that ends the inquiry, and any error that occurred, and I don't find that one did occur, but if an error occurred at step five, it would be harmless error.

And so in sum and substance, I find the correct legal principles were applied in this case and the result is supported by substantial evidence.  I will grant judgment on the pleadings to the defendant.  Thank you again for excellent presentations, I hope you both have a good day.

MS. CHADWICK:  Thank you, your Honor, you, too.

MR. NAGELBERG:  Thank you.

(Proceedings Adjourned, 11:59 a.m.)

1  CERTIFICATE OF OFFICIAL REPORTER

4      I, JODI L. HIBBARD, RPR, CRR, CSR, Federal
5  Official Realtime Court Reporter, in and for the
6  United States District Court for the Northern
7  District of New York, DO HEREBY CERTIFY that
8  pursuant to Section 753, Title 28, United States
9  Code, that the foregoing is a true and correct
10 transcript of the stenographically reported
11 proceedings held in the above-entitled matter and
12 that the transcript page format is in conformance
13 with the regulations of the Judicial Conference of
14 the United States.

16                Dated this 16th day of January, 2020.

19                /S/ JODI L. HIBBARD
20                JODI L. HIBBARD, RPR, CRR, CSR
                  Official U.S. Court Reporter

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547